**Hand-Delivered**

# UNITED STATES DISTRICT COURT

for the

Western District of North Carolina

Charlotte Division

FILED
CHARLOTTE, NC

OCT 2 9 2025

US DISTRICT COURT
WESTERN DISTRICT OF NC

|  |  |
|---|---|
| Jack Clyde Wauchope II | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) |
| *please write "see attached" in the space and attach an additional* | ) |
| *page with the full list of names.)* | ) |
| -v- | ) |
| | ) |
| | ) |
| The Bank of New York Mellon Corporation | ) |
| _____ | ) |
| *Defendant(s)* | ) |
| *(Write the full name of each defendant who is being sued. If the* | ) |
| *names of all the defendants cannot fit in the space above, please* | ) |
| *write "see attached" in the space and attach an additional page* | ) |
| *with the full list of names.)* | ) |

Case No.  3:25 - CV - 869 - MOC
*(to be filled in by the Clerk's Office)*

Jury Trial:  *(check one)*  ☒ Yes  ☐ No

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Jack Clyde Wauchope II |
| Street Address | 6608 Saunton Court |
| City and County | Charlotte, Mecklenburg |
| State and Zip Code | NC 28277 |
| Telephone Number | 980-636-9756 |
| E-mail Address | jcwsmw@proton.me |

#### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

    Name                                The Bank of New York Mellon Corporation

    Job or Title *(if known)*

    Street Address                       240 Greenwich Street, 19th Floor

    City and County                   New York, New York

    State and Zip Code              NY, 28277

    Telephone Number            1-800-947-4748

    E-mail Address *(if known)*

Defendant No. 2

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

## C.    Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Mellon 1st Business Bank |
| Street Address | 601 West Fifty Street |
| City and County | Los Angeles, Los Angeles |
| State and Zip Code | CA, 90071 |
| Telephone Number | No longer available |

## II.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☐    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

   *(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

   *(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☒    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

   *(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☒    Other federal law *(specify the federal law)*:

   Internal Revenue Code of 1986, as amended
   Employee Retirement Income Security Act of 1974, as amended
   Public Health Service Act, as amended
   Health Insurance Portability and Accountability Act of 1996, as amended
   Patient Protection and Affordable Care Act, as amended
   Securiites Exchange Act of 1934, as amended
   Title 18 U.S.C § 241
   Title 18 U.S.C § 656
   Title 18 U.S.C § 1001
   Title 18 U.S.C.§ 1027
   Title 18 U.S.C § 1035

☒    Relevant state law *(specify, if known)*:

The California Fair Employment and Housing Act

☐ Relevant city or county law *(specify, if known)*:

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.  The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐   Failure to hire me.

☐   Termination of my employment.

☐   Failure to promote me.

☐   Failure to accommodate my disability.

☒   Unequal terms and conditions of my employment.

☐   Retaliation.

☐   Other acts *(specify)*: _____

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.  It is my best recollection that the alleged discriminatory acts occurred on date(s)

Every day since at least October 18, 2023 - this is the date of a letter from The Bank of New York Mellon Corporation that claims to be a summary of a material modification to The Bank of New York Mellon Health and Welfare Plan (Section 104(b)(1) of ERISA required the alleged summary of a material modification to The Bank of New York Mellon Health and Welfare Plan to be furnished to participants no later than 60 days after the date of the adoption of the modification, but The Bank of New York Mellon Corporation in the letter that claims to be a summary of a material modificaiton, it is not signed by an authorized representative of The Bank of New York Mellon Corporation, failed to disclose the date the modification was actually made, so at this time I do not know the actual date the modification was made to The Bank of New York Mellon Health and Welfre Plan that discrimates against employees with disabilities).

C.  I believe that defendant(s) *(check one)*:

☒   is/are still committing these acts against me.

☐   is/are not still committing these acts against me.

D.  Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

| | | |
|---|---|---|
| ☐ | race | |
| ☐ | color | |
| ☐ | gender/sex | |
| ☐ | religion | |
| ☐ | national origin | |
| ☐ | age *(year of birth)* | *(only when asserting a claim of age discrimination.)* |
| ☒ | disability or perceived disability *(specify disability)* | |

The permanent effects of a traumatic brain injury

E.  The facts of my case are as follows.  Attach additional pages if needed.

See attached

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.  Exhaustion of Federal Administrative Remedies

A.  It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

December 23, 2024

B.  The Equal Employment Opportunity Commission *(check one)*:

        ☐    has not issued a Notice of Right to Sue letter.

        ☒    issued a Notice of Right to Sue letter, which I received on *(date)*   7/31/2025    .

        *(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.  Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

        ☐    60 days or more have elapsed.

        ☐    less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

1) Rescission of modification that was made on or before October 18, 2023 to The Bank of New York Mellon Health and Welfare Plan that added a new rule of eligibility to participate in a medical plan under The Bank of New York Mellon Health and Welfare Plan based upon the health status-related factor of disability, which remains an enforced rule by the administrators, managers delegates and fiduciaries of The Bank of New York Mellon Health and Welfare Plan, and violates: Section 102(a) of the Americans with Disabiliies Act of 1990, as amended; Section 2705 of the Public Health Service Act, as amended; Section 702 of the Employee Retirement Income Security Act of 1974, as amended; Section 9802 of the Internal Revenue Code of 1986, as amended; and Title 18 Sections 241, 656, 1001, 1027 and 1035 of the United States Code.

2) Retroactive reinstatement of my participation in the medical plan under The Bank of New York Mellon Health and Welfare Plan I was a Participant in at the time my participation in that medical plan was illegally terminated on June 30, 2024 in violation of the laws listed above.

3) $300,000 for punitive damages, pecuniary losses and non-pecuniary losses due to the wollful and malicious disregard of the laws of the United States by The Bank of New York Mellon Corporation that have caused me emotional distress, increased pain, and expenses to enforce my rights under laws of the United States as allowed by the Civil Rights Act of 1991, as amended.

4) $23,296,027 for punitive damages, pecuniary losses and non-pecuniary losses due to the willful and malicious disregard of the Fair Employment and Housing Act of the State of California, the State in which I was employed, a resident and a Citizen when my disability commenced, by The Bank of New York Mellon Corporation that have caused me emootional distress, increased pain, and expenses to enforce my legal rights.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 10-29-25

Signature of Plaintiff ___Jack Clyde Wauchope II___

Printed Name of Plaintiff ___Jack Clyde Wauchope II___

**B.**    **For Attorneys**

Date of signing:    _____

Signature of Attorney    _____

Printed Name of Attorney    _____

Bar Number    _____

Name of Law Firm    _____

Street Address    _____

State and Zip Code    _____

Telephone Number    _____

E-mail Address    _____

Section III.  Statement of Claim

Subsection E.  The facts of my case are as follows:

## <u>Illegal Modification of The Bank of New York Mellon Health and Welfare Plan</u>

In October 2023 I received a letter addressed to me dated October 18, 2023 ("Letter") from The Bank of New York Mellon Corporation ("BNY Mellon") that informed me that The Bank of New York Mellon Health and Welfare Plan (the "Plan") had been modified, and that the letter was alleged to be a summary of a material modification ("SMM") of the Plan as required by Section 102 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"); but nowhere in the letter does it state who at BNY Mellon approved the modification of the Plan, nor was the letter signed by an officer of BNY Mellon authorized to execute legal documents of the Plan.  Whoever wrote the Letter also left out the fact that a SMM is also a requirement of Section 104(b)(1) of ERISA, which also requires the date of the adoption of the modification to the Plan to be disclosed in a SMM, but the letter does not contain the date the modification was adopted.

The Letter that alleges to be a SMM of the Plan (not signed by an authorized officer of BNY Mellon) clearly stated that the modification made on an undisclosed date to the Plan by unnamed individuals was the addition of a new rule of eligibility to participate in a medical plan under the Plan based upon the health status-related factor of <u>**disability**</u> of BNY Mellon employees who participate in the Plan and an arbitrary length of time (30 months) for BNY Mellon employees with disabilities on approved long-term disability leaves.  The Letter that alleges to be a SMM of the Plan stated that June 30, 2024 was the effective date of the new rule added to the Plan, and the Letter gives no section of any law of the United States that allows or supports the modification that was made to the Plan.

I called BNY Mellon on May 30, 2024 and informed the individual I spoke with in sufficient detail that the modification made to the Plan I was informed about in the Letter sent to me by BNY Mellon, that would become effective June 30, 2024, violates the Americans with Disability Act of 1990, as amended ("ADA") and the Patient Protection and Affordable Care Act, as amended ("PPACA"); and I was told ticket number 2176374 was opened.

There was ample time for BNY Mellon and the administrator(s), managers, delegates and fiduciaries of the Plan to confirm my notification and remove the modification to the Plan that violated laws of the United States and not carry out the action of illegally terminating the ability of BNY Mellon employees with disabilities and on approved long-term disability leaves from participating in a medical plan under the Plan.

On June 5, 2024 Katie (I do not recall her last name) from BNY Mellon called me regarding my previous phone call to BNY Mellon.  She was insistent that BNY Mellon had the right to amend the Plan according to ERISA and that BNY Mellon follows the laws.  I agreed with Katie that ERISA does allow BNY Mellon to amend the Plan, but I also informed her that ERISA requires the Plan and all plans under the Plan to follow all other laws of the United States as well (not sure if I did disclosed to Katie that it was Section 514(d) of ERISA); and I informed Katie that the modification that was an amendment to the Plan contained in the Letter that would become effective June 30, 2024 violates the ADA and the PPACA since I and all other BNY Mellon employees with disabilities and on approved long-term disability leaves were being segregated from other BNY Mellon employees and denied the ability to continue to participate in a medial plan under the Plan based upon disability.

To counter Katie's claim that BNY Mellon follows the laws, I informed Katie that in 2018 Patricia Sullivan, Managing Director Healthcare Strategy, told me in no uncertain terms that under advice of legal counsel BNY Mellon would not follow Section 223 of the Internal Revenue Code of 1986, as amended ("IRC") as

1

written, and that BNY Mellon would continue to illegally withhold contributions from the health savings account it had opened in my name. When I asked Ms. Sullivan for the name of the attorney(s) who gave her that advice so I could start a disciplinary action with the State Bar Association he or she was a member of, Ms. Sullivan hung up on me and never answered another call from me or return another email from me. If Ms. Sullivan actually did receive such advice from an attorney at BNY Mellon that attorney violated their oath to defend the Constitutions and the laws under them. The rest of this matter will be covered by a new claim filed with the Equal Employment Opportunity Commission ("EEOC") when it reopens because Rosemary Caddle, Senior Investigator, with the EEOC refused to accept my amendment to EEOC charge number 480-2025-01428 on July 31, 2025.

I also believe I informed Katie that Patricia Sullivan told me earlier in our phone conversation that BNY Mellon would not reimburse me for the amounts BNY Mellon illegally overcharged me for years to participate in a medical plan under the Plan, because BNY Mellon for years did not follow what was actually written in the written instruments of the Plan, which is a violation of ERISA and criminal laws for fraud (Title 18 USC Sections 1001, 1027 and 1035). Ms. Sullivan told me that she and all others at BNY Mellon would cause BNY Mellon to amend the Plan to conform with how it had been illegally charging me and all the other disabled employees of BNY Mellon on an approved long-term disability leave, which is what they have attempted to do to date since our conversation in the alleged amended and restated written instruments of the Plan that are all unsigned and undated since my interaction with Ms. Sullivan, thus I believe the last legal amended and restated written instrument of the Plan is the one signed by Judith K. Verhave on March 28, 2018, which would mean BNY Mellon is in arrears in making contributions to the health savings accounts of all its employees who participate in the medical plans that have a health savings account, because on page 34 it states "BNY Mellon will make automatic contributions to your HSA in January…" in each year, which it has not done in 2024 and 2025. The rest of this matter will be covered by a new claim filed with the Equal Employment Opportunity Commission ("EEOC") when it reopens because Rosemary Caddle, Senior Investigator, with the EEOC refused to accept my amendment to EEOC charge number 480-2025-01428 on July 31, 2025.

Unfortunately, Katie's tone and choice of words seemed dismissive and she did not seem interested or concerned with learning facts and truths, her reaction made me feel that she wasn't worried about the illegal actions I made her aware of, which is the same response I have gotten for over a decade every time I have called or corresponded with BNY Mellon employees to inform them that BNY Mellon did not appear to be following the terms of the Plan or the Mellon Long Term Disability Plan under the Plan, or laws of the United States.

On July 18, 2024 I called BNY Mellon and spoke with Stephanie to confirm that my previous notifications reached the appropriate individuals charged with the responsibility of administering and managing the Plan and who have a fiduciary responsibility to the Participants in the Plan, prior to the effective date of the illegal rule added to the Plan, which she assured me they either had been made aware of or that she would make sure they were aware of my notifications.

On July 19, 2024 and August 2, 2024 I received a voice mail from Christine Ellwanger, Head of North America Benefits, People Rewards Department, BNY Mellon, who stated she was head of benefits for BNY Mellon and that she was reaching out to me regarding my previous notifications. Due to my grandson having two open heart surgeries and my other daughter getting engaged in July 2024 and married in October 2024, these impacted my ability to focus on the illegal actions of BNY Mellon. I returned Christine Ellwanger's calls on November 20, 2024 and December 20, 2024 and left voicemails.

On January 23, 2025 Ms. Ellwanger finally called me back and we spoke for twenty-two minutes. She was aware that I had inquired about submitting a claim for adverse benefit termination by the Plan based upon the modification made to the Plan that was communicated to me in the alleged SMM and subsequent termination of my ability to participate in an employee benefit plan offering health insurance coverage for medical care

under the Plan. I told her the modification to the Plan violated the ADA, PPACA and ERISA. I also told Ms. Ellwanger about:

- The illegal method used by BNY Mellon to calculate my premium to participate in an employee benefit plan offering health insurance coverage for medical care under the Plan that caused BNY Mellon to overcharge me, and that I first notified BNY Mellon years ago I was due a refund, but no one to date has done anything to correct this illegal action, and that Patricia Sullivan told me that BNY Mellon would amend the Plan in an attempt cover-up their illegal actions;
- The illegal withholding of comparable contributions by BNY Mellon to the health savings accounts BNY Mellon had opened in my name, as well as other disabled employees who were entitled to Medicare benefits under the Social Security Act of 1935, as amended ("SSA");
- The illegal rule in the Plan that limits disabled employees on an approved long-term disability leave from participating in all the benefits offered to the employees of BNY Mellon;
- BNY Mellon's violations of Section 1862(b) of the SSA and underpayment of my long-term disability insurance claim under the Mellon Long Term Disability Plan.

Ms. Ellwanger seemed interested and concerned, and told me she would send me an email with her contact information, which she did that day.

On January 27, 2024 I emailed Ms. Ellwanger and asked her to please provide me with some information that would assist me with the claim we spoke about that I was preparing to submit to BNY Mellon. My request was for the answering of some questions and the documents that under Section 104(b)(4) of ERISA has to be provided to me within thirty (30) days of my request. My questions and requests were:

1. Who approved the amendment to the Plan disclosed to me in the letter dated October 18, 2023?
2. If it was a committee can you please let me know the names of those on the committee and who voted for the amendment and if there were any who voted against it?
3. What date was the amendment approved?
4. What was the total number of BNY Mellon employees on an approved long-term disability leave affected by the amendment to the Plan on the date the amendment was approved? And June 30, 2024?
5. Can you please confirm that The Bank of New York Mellon Health and Welfare Plan was not amended and restated in 2020?
6. PDF copy of The Bank of New York Mellon Health and Welfare Plan for 2019?
7. PDF copy of The Bank of New York Mellon Health and Welfare Plan for 2002?
8. Copy of the most recent annual report required by Section 103 of ERISA (I had been sent IRS reports and not the annual report that is described in Section 103 of ERISA).

On February 17, 2025 I emailed Ms. Ellwanger and requested the following:

1. Complete copy of the illegal executed Group Contract DG-45618-NY with Prudential that my claim is illegally a part of;
2. Name of the individual who presently holds the title Global Head of Benefits and Wellbeing and their email address.

Also on February 17, 2025 I emailed Ms. Ellwanger and requested the following:

1. Copy of the November 17, 1998 amended and restated written instrument of the Mellon Long Term Disability Plan and the amendments of July 17, 2000 and December 18, 2000.

To date Ms. Ellwanger has not responded to my emails. If I am not mistaken, Ms. Ellwanger is a fiduciary for the Plan, which means her duty is to protect me as a Participant in the Plan and not BNY Mellon, but her

3

apparent disinterest to protect my rights is consistent with my experience interacting with other fiduciaries of the Plan.

On April 17, 2025 I received an email from Katherine DiCenzo, Vice President, Health and Insurance Delivery, BNY Mellon, she did not specifically state she was responding on behalf of Ms. Ellwanger, and Ms. DiCenzo attached copies of:

1. Current Plan Document and SPD effective as of 1/1/2025;
2. Most recent annual report (IRS Form 5500) for the plan year 2023;
3. Group Contract DG-45618-NY
4. January 1, 2024 benefits enrollment statement

Ms. DiCenzo sent me an even more incomplete copy of Group Contract DG-45618-NY and she did not send me the annual report required under Section 103 of ERISA, the IRS Form 5500 does not contain anywhere near the information required by Section 103 of ERISA.

On May 9, 2025 I emailed Ms. DiCenzo and requested a complete copy of Group Contract DG-45618-NY.

On May 23, 2025 I emailed Ms. DiCenzo and requested a copy of the annual report required under Section 103 of ERISA with all the information required.

On May 30, 2025 I emailed Ms. DiCenzo and requested the following:

1. Who approved the amendment to the Plan disclosed to me in the letter dated October 18, 2023?
2. What date was the amendment approved?
3. A list of all the companies in the market place with the "market practice" that is defined in the letter dated October 18, 2023 that caused employees of BNY Mellon to make a statement of fact in the letter that employees of BNY Mellon found a "market practice" in the market place.
4. Copies of all written instrument of ERISA plans for the companies in the market place with the "market practice" noted in the letter dated October 18, 2023 that employees of BNY Mellon obtained to verify that a "market practice" exited.
5. Annual reports required under Section 103 of ERISA since 2002.
6. The number of employees covered by the Plan in each year since 2002.
7. The name and address of each fiduciary of the Plan by year since 2002.
8. The name and address of each fiduciary of the Mellon Long Term Disability Plan by year since 2002.
9. A statement of receipts and disbursements for the Plan during fiscal years 2002 to 2024.
10. A statement of the assets and liabilities of the Plan aggregated by categories.
11. A statement of receipts and disbursements for the Mellon Long Term Disability Plan during fiscal years 2002 to 2024.
12. A statement of the assets and liabilities of the Mellon Long Term Disability Plan.
13. Most recent copy of the Summary Plan Description of the Mellon Long Term Disability Plan.

On May 30, 2025 Ms. DiCenzo in an email finally responded to my emails to her, she did not provide me with any of the information I have requested under ERISA, and she stated:

1. "At this point, we believe we have provided you with the documents and information that we are required to provide in connection with your requests related to The Bank of New York Mellon Health and Welfare Plan (the Plan) and we do not intend to share any further documents at this time."
2. "I will note that the Annual Return/Report of Employee Benefit Plan (Form 5500) that we provided is a form developed by both the U.S. Department of Labor and the Internal Revenue Service and is appropriately filed with the U.S. Department of Labor."

4

On June 6, 2025 I emailed Ms. DiCenzo with the following questions:

1. Can you please let me know to whom you were referring to with the pronoun "we?"
2. Were you using "we" to refer to only yourself and other individuals with The People Department?
3. Does "we" include the Administrator of The Bank of New York Mellon Health and Welfare Plan?
4. Does "we" include all the members of eh Corporate Benefits Committee, or its successor committee, or any members of the BNY Mellon Legal Department?

Ms. DiCenzo has never responded to my June 6, 2025 email.

On October 9, 2025 I emailed Ms. Ellwanger and asked if Ms. DiCenzo in her May 30, 2025 email was speaking on Ms. Ellwanger's behalf.

On October 15, 2025 Ms. Ellwanger responded to my email and did not directly state that Ms. DiCenzo was speaking on Ms. Ellwanger's behalf, but implied it. Even though I made requests for the written instruments of ERISA plans created by BNY Mellon to Ms. Ellwanger and Ms. DiCenzo, Ms. Ellwanger effectively informed me she does not believe she has to provide them to me.

As a Participant in the Plan and the Mellon Long Term Disability Plan I am entitled to request information about both the Plan and the MLTDP that under ERISA and are to be made available to me by BNY Mellon the Sponsor of both plans, and since Ms. Ellwanger and Ms. DiCenzo, at the very least unless more employees of BNY Mellon were involved with them, have chosen to not provide me with information and documents I understand I am entitled to under ERISA, which causes BNY Mellon to presently be in violation of providing me what I requested under ERISA.

I did my best to make it abundantly clear during my phone conversations with Ms. Ellwanger and all other BNY Mellon employees, as well as the employees of contracted administrators Alight and Accolade, that the modification to the Plan disclosed to me in the Letter violated laws of the United States. In the conversations I named specific laws that were violated and I asked what specific sections of any laws allowed for the modification to the Plan; but everyone at BNY Mellon, Alight and Accolade I have spoken with have all failed to respond to my request to provide me with a specific section of any law that allowed for the modification to the Plan, or acknowledge the facts I gave them that the modification to the Plan violates the laws of the United States I quoted to them. All these actions by employees of BNY Mellon, Alight, and Accolade are not the actions of reasonably prudent individuals.

All of these individuals can not claim that they did not know or understand the laws of the United States that the Plan is subject to and must follow, that is not a defense for such actions. The actions of BNY Mellon and the administrators, managers, delegates and fiduciaries of the Plan in the past caused many of these laws to be quoted in the signed and dated amended and restated written instruments of the Plan and the unsigned and undated alleged amended and restated written instruments of the Plan. All of their actions to date with respect to the illegal action disclosed in the Letter have been that of unreasonable individuals who are not concerned with a notice from me that actions have violated laws of the United States, which I believe can only cause a reasonably prudent individual to conclude that such actions are based upon either malice or reckless indifference to the laws of the United States.

On June 30, 2024 BNY Mellon and the administrator(s), managers, delegates and fiduciaries of the Plan enacted the illegal rule added to the Plan by the modification disclosed in the Letter and they terminated my participation and my dependents participation in a medical plan under the Plan. These terminations were evidenced by:

5

1. A letter from BNY Mellon to me indicating my direct debit by BNY Mellon for the cost to participate in the Plan for July 2024 was being reduced to reflect that I was no longer allowed to participate in a medical plan under the Plan;

2. The direct debit amount from my checking account by BNY Mellon on July 1, 2024 for the amount stated in the letter from BNY Mellon for my cost to participate in the Plan was reduced;

3. The BNY Mellon benefits portal provided by Alight Solutions after June 30, 2024 showed that I no longer was enrolled in a medical plan under the Plan.

It seems everyone at BNY Mellon has forgotten or never read the definition of "employee" as found in laws of the United States that BNY Mellon and all its employees must follow with respect to the employees of BNY Mellon, including the Plan and employee benefit plans under the Plan, as well as insurance contracts BNY Mellon or the Plan enters into for the Plan, here are a few definitions:

1. Section 3(6) of ERISA, as amended, which is codified in Title 29 Section 1002(6) of the United States Code, states: "The term "employee" means any individual employed by an employer." This definition was effective January 1, 1975.

2. Section 101(4) of the Americans with Disability Act of 1990, as amended ("ADA"), which is codified in Title 42 Section 12111 of the United States Code, states: "The term "employee" means any individual employed by an employer…" This definition was effective July 26, 1992.

3. Section 11 of the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), which is codified in Title 29 Section 623 of the United States Code, states: "The term "employee" means an individual employed by any employer." This definition was effective June 12, 1968.

4. Section 3(e) of the Fair Labor Standards Act of 1938, as amended ("FLSA"), which is codified in Title 29 Section 203 of the United States Code, states: "…the term "employee" means any individual employed by an employer." This definition was effective October 24, 1938.

5. Section 210(j) of the Social Security Act of 1935, as amended ("SSA"), which is codified in Title 42 Section 410(j) of the United States Code, states: "The term "employee" means – (1) any officer of a corporation; or…"

6. Section 1862(b)(1)(E)(ii) of the SSA, which is codified in Title 42 Section 1395y(b)(1)(E)(ii) of the United States Code, states: "An individual has "current employment status" with an employer if the individual is an employee…"

The ERISA, ADA, ADEA and FLSA definitions of employee are all the same and they do not make any distinction between employees who are disabled and employees who are not, thus none of these laws segregate any disabled employees from non-disabled employees in any way. In all four laws an "employee" of an employer, whether non-disabled or disabled, including a disabled employee on an approved long-term disability leave, are simply just an "employee." Also, none of the four laws makes any distinction as to whether an "employee" is active or inactive as BNY Mellon does, which might be why employees of BNY Mellon have fooled themselves into believing that BNY Mellon employee with disabilities and on approved long-term disability leaves are not real or full fledged employees, and therefore was their justification to deny privileges of employment they were entitled to under the ADA and other laws of the United States.

Section 210 of the SSA also makes it very clear that an individual who is an officer of a corporation is an employee of the corporation, and according to Section 1862(b)(1)(E)(ii) of the SSA an employee has "current employment status." This means that an employee with a disability on an approved long-term leave and receiving long-term disability insurance benefits remains an employee according to ERISA, the ADA,

6

the ADEA, and the SSA, and also retains a "current employment status" with their employer according to the SSA. I am a Vice President of BNY Mellon on an approved long-term disability leave, an officer position; therefore under the SSA I am an employee of BNY with a current employment status.

This is important to understand because BNY Mellon and the administrators, managers, delegates and fiduciaries of the Plan have since at least the commencement of my disability in 2002 discriminated against BNY Mellon employees with a disability on approved long-term disability leaves by causing or allowing illegal rules of segregation and discrimination to be included in the written instruments of the Plan, and employee benefit plans and insurance contracts under or part of the Plan, and illegal actions to be carried out against BNY Mellon employees with a disability and on approved long-term disability leaves. These illegal rules and actions by BNY Mellon and the administrators, managers, delegates and fiduciaries of the Plan are a violation of the ADA, ERISA, SSA, IRC and other laws of the United States, and are the reason why I am notifying the appropriate Government Authorities of these violations of laws of the United States so that BNY Mellon and the administrators, managers, delegates and fiduciaries of the Plan can all be held accountable for their willful neglect and what I believe is their malicious indifference to the laws of the United States, and all rightful benefits are retroactively restored for those BNY Mellon employees with disabilities who have been discriminated against by BNY Mellon and the administrators, managers, delegates and fiduciaries of the Plan, the Mellon Long Term Disability Plan and other employee benefit plans under the Plan.

To be as clear as possible, so that there is no misunderstanding by anyone who reads this or the Letter or the unsigned and undated alleged amended and restated written instruments of the Plan made available to Participants in the Plan in the latter part of 2024 and at some undisclosed time for 2025 that both contained the modification to the Plan referenced to in the Letter, the words written in the Letter cause me to believe that all employees at BNY Mellon involved with the approval of the modification to the Plan, the drafting and approval of the Letter clearly understood they were establishing a new rule for the Plan whereby the continued eligibility for certain BNY Mellon employees with disabilities on approved long-term disability leaves to remain enrolled in a medical plan under the Plan would be changed effective June 30, 2024; and that they fully understood that they used the health status-related factor of disability to deny me, and all the other BNY Mellon employees with disabilities also in the segregated group of disabled employees of BNY Mellon referenced above, the right to continue to be eligible to participate in a medical plan under the Plan.

According to the words written and punctuation used in the Letter from BNY Mellon, and laws of the United States I have read, and the rules of grammar of the English Language, it is my opinion as a natural born Citizen of the United States of America that the modification to the Plan disclosed in the Letter violates a number of laws of the United States of America, including but not limited to:

1. Section 102(a) of the ADA (specifically the clause after the comma and the conjunction "or" that concerns the subgroup of "employees with disabilities" that was created by Section 101(4) of the ADA);

2. Sections 101, 102, and 401 of the Health Insurance Portability and Accountability Act of 1996, as amended ("HIPAA");

3. Sections 102, 404, 501, 511 and 702 of ERISA;

4. Sections 2705 and 2712 of the Public Health Security Act, as amended ("PHSA");

5. Section 9802 of the Internal Revenue Act of 1986, as amended ("IRC");

6. Sections 1001 and 1201 of the Patient Protection and Affordable Care Act, as amended ("PPACA");

7. Title 18 Sections 1001, 1027 and 1035 of the United States Criminal Code codified in the United States Code.

All of the above laws except the PHSA are disclosed in the signed and dated amended and restated written instruments of the Plan or the unsigned and undated alleged amended and restated written instruments of the Plan.

In the 2003 Mellon Benefits Enrollment Workbook on page 34 it is stated: "HIPAA protects against losing existing health care coverage…" So in 2002 when that was written certain employees of BNY Mellon understood that fact, but yet at the same time BNY Mellon and the administrators, managers, delegates and fiduciaries of the Plan had a rule in the Plan in 2002 that did just that, and in 2023 employees of BNY Mellon willfully and negligently decided to further increase their acts of discrimination against BNY Mellon employees with disabilities.

If the modification to the Plan outlined in the Letter violates any laws of the United States of America as I believe it does, this will also mean that amendment to the Plan and the Letter would be a violation of:

1. The BNY Melon Code of Conduct – Doing What's Right signed by Robin Vince, President and Chief Executive Officer, and presumably all previous codes of conducts enacted by BNY Mellon;

2. The letter from Shannon Hobbs, Chief People Officer dated 2024 to the employees of BNY Mellon outlining BNY Mellon's commitment to remain in compliance with the Equal Employment Opportunity laws (the ADA is the law that created the Equal Employment Opportunity Commission, its job is to enforce the ADA, but they have failed because they fraudulently misquote Section 102(a) of the ADA, for now, but that will change soon).

The unsigned and undated alleged amended and restated written instrument of the Plan that was made available to the Participants in the latter part of 2024 also violates the BNY Mellon Code of Conduct because it fraudulently states it is effective January 1, 2024, which on page 28 of the BNY Mellon Code of Conduct states backdating or misrepresentation of company books, records or reports will not be tolerated, yet BNY Mellon has backdated signed and dated written instruments of the Plan and employee benefits plans under the Plan for at least twenty-three years that I know of, and it has backdated unsigned and undated alleged written instruments of the Plan since 2018.

The amendment made to the Plan that I was notified of in the Letter, and which was enacted on June 30, 2024, I believe is a willful negligent act of discrimination by BNY Mellon and the administrator(s), managers, delegates and fiduciaries of the Plan against me and all other disabled employees BNY Mellon included in the segregated group of disabled employees of BNY Mellon I reference above.

Another illegal part of the Letter regarding its notification of the modification to the Plan is that it states:

"We are notifying you well in advance of the changes becoming effective to allow you time to enroll in Medicare Parts A and B, if eligible,…"

This was an attempt to illegally coerce BNY Mellon employees with disabilities to enroll in Medicare in violation of Section 1862(b) of the Social Security Act of 1935, as amended. BNY Mellon did this to me in 2004 as well and this matter will be covered by a new claim filed with the Equal Employment Opportunity Commission ("EEOC") when it reopens because Rosemary Caddle, Senior Investigator, with the EEOC refused to accept my amendment to EEOC charge number 480-2025-01428 on July 31, 2025.

An additional reason why I believe the amendment to the Plan contained in the Letter from BNY Mellon addressed to me is a willful negligent act of discrimination by BNY Mellon and the administrator(s), managers and fiduciaries of the Plan, is that BNY Mellon has employees who are members of a State Bar

8

Association, and contracted administrators and managers of the Plan who advise BNY Mellon on its medical plans either have employees who are members of a State Bar Association and/or they have members of State Bar Associations on retainer who worked with the written instruments of the Plan and employee benefit plans under the Plan. All these members of a State Bar Associations had to pass a test that proved they could read, understand and apply the laws passed by the United States of America and the State in which the bar association is established. This means there can be no reasonable excuse for BNY Mellon and the administrators, mangers, delegates and fiduciaries of the Plan creating or allowing to be created any amendment to the Plan that violates any law of the United States of America due to them either being members of a State Bar Association or they relied on the counsel of members of a State Bar Association, it can only be due to willful neglect of everyone involved to not have read the laws the Plan is subject to, or even worse for them to ignore them, it can not be that they did not understand the laws and made a mistake, because all the members of the State Bar Associations had already proven they knew how to read, understand and apply the laws of the United States of America.

BNY Mellon must immediately retroactively reinstate all BNY Melon employees with disabilities participation in the Plan whose participation was illegal terminated, reimburse them for all costs, and reimburse all who have been illegally coerced to join Medicare what they have paid to date and what they will have to pay until they are sixty-five years old if they are unable to terminate Medicare without any penalty.

9